Case No. 14-1231 at Elm, Quicken Loans, Inc. petitioner v. National Labor Relations Board. Mr. Jay for the petitioner, Mr. Salter for the responder. Mr. Jay. Good morning, Your Honor. May it please the Court, William Jay from Goodwin-Proctor for the petitioner, Quicken Loans. In this case, the Board committed a two-fold error in concluding that Quicken's agreement interferes with protected Section 7 rights. The Board set the floor too high and the ceiling too low. And by that, I mean the Section 7 does not protect everything that the Board said that it protects, and the agreement does not prohibit everything that the Board said that it prohibits. So let me go through that in turn. The Board relied in part on the notion that addresses, phone numbers, and the like are prohibited from dissemination by this agreement. And the agreement certainly does prohibit employees from disseminating their co-workers' personal information. That's in the personnel information provision at page 33. But it does not prohibit them from disseminating their own. And because the first word in the relevant provision is nonpublic, it also doesn't prevent them from disseminating their co-workers' information with consent. Can I just ask you a fact question? The general counsel's complaint in this case, did it cover a time period when Ms. Garza was actually employed by your company? Or was it after she'd already left, just for jurisdictional purposes? The complaint, I believe, the complaint was filed after she'd left the company. I'm not sure of the answer to that. We'll maybe try to answer it on the phone. You don't happen to know if that jurisdictional issue is jurisdictional in our sense of the word? A jurisdictional issue about the- In the Hyundai case, they talked about jurisdiction there and actually whether the complaints asserted by the general counsel tied to a specific complaining employee. And so that's why I'm asking. Because in this case, I know she'd left. And that was the genesis of their dispute with her on allegations of taking proprietary information. I was just trying to make sure there was some overlap. I believe the answer to that is yes, in terms of time period. But before I speak out of school, let me try and address that when I stand back up. And I'm sure the board has a view as well. The address and phone number provision is one of the things that we find most problematic about this because an employer has a valid interest in protecting its employees' personal information from dissemination. And what this policy does is it prevents employees from taking the entire phone book, the entire list of e-mail addresses, and walking out the door with it. There's no protected Section 7 right to do that. What this court decided in the community hospitals case, and I think the Seventh Circuit also in the analogous certified grocers case, recognized that it would be absurd to read an agreement of a general prohibition on the dissemination of personal information to prohibit employees from coming home and sharing their pay stub or their address with an accountant, a spouse, or a coworker. But what about if two employees were talking, one supporter of the union and the other one trying to persuade that person, and they say, look, can I give your e-mail address to the union representative? They can send you exactly the information you've been asking me about. Would that violate the policy? It would not, Your Honor. Because how do I know that from the text of the policy? I think the key word is nonpublic, which is the first word in the relevant proprietary confidential information. Well, her e-mail is nonpublic. Of course. Who would say her e-mail is not public? I would say, well, two things. Or phone number, whichever you want. Two things about that. I think that it would no longer be nonpublic in the relevant sense, and I think the way that we can see that is to look at the purpose of the policy, which is at page 20 of the joint appendix, and you'll see that at that spot, the purpose of the policy is to protect, this is B3, letter D, confidential and proprietary information belonging exclusively to the company. Now, a list of everybody's e-mail addresses fits that description, but an individual's address or phone number or e-mail address doesn't fit that description. Quicken Loans is not trying to prohibit people from sharing their own addresses or phone numbers with each other. Sending a holiday card with a return address on the envelope does not violate this policy. Somebody said it would no longer be nonpublic. What did you mean by that? Well, I don't think it would be nonpublic at all in the relevant sense, but I guess I was sort of thinking ahead to the next issue. I do think that an employee who knew highly confidential information about him or herself can disseminate that however she wants, even if employees of the company could not. So if an employee wants to talk about her own disciplinary history. I think that we know that from the text of the policy. Again, this is page 32. What would happen with wages? I know Quicken Loans has, or it sounds like it has on its website, the range of payment for, say, the mortgage sellers. So you publicize a range of $30,000 to $50,000 for salaries a year. And that's obviously out there in public. But I take it that this prohibition would prohibit somebody from telling the union what their co-worker's salary is? Let me answer that carefully. I think it would prohibit someone who worked in the finance department from pulling down a spreadsheet of everyone's salary and giving that to the union, yes. Okay, but then my question is, if a worker wanted to tell what a co-worker's salary was? I think if the co-worker shared that with – that's exactly what I was trying to get to with my answer to Judge Srinivasan a moment ago. I think if the co-worker wants to share that with their – co-worker one shares it with co-worker two, and co-worker two wants to pass it along to the union, that has not been disseminated in violation of the policy because it was initially let out of the circle of trust or the cone of silence. What if there wasn't communication? What if, in fact, as it turns out – and I won't say this is Quicken Loans because I don't want to – but company X has a public range of salaries from $30,000 to $50,000, and as it turns out, all women get $30,000 and all men get $50,000. So the public range is out there. And without getting the consent of other employees, but knowing that this is a problem, somebody who is pro-union wants to let the union know that you've got this huge problem going on here. This is something that you can use to promote what the union can do to help people. Well, I think that the purposes to which it can be put don't necessarily override the employer's valid purposes and if you – valid purpose in protecting – It would violate your policy to disclose that disparity to the union. Well, I think that saying – I downloaded the spreadsheet off of the system and I shared it with you. You're changing my question for obvious reasons. But I just want to tell – I want to tell the union that I know we women are getting $30,000 and they're getting $50,000 and the men are getting $50,000, and I'm not going to get the consent of every male employee, but I want to tell the union that. They need to know about that. I guess I – if I may ask, Your Honor, in your hypothetical, where is the knowledge coming from? Where are the employees' knowledge coming from? Where all employee knowledge comes from? Gossip. I don't think that would be prohibited, Your Honor. I think that what's protected – because what's not being dealt with there is confidential and proprietary information. It's not public at all. Who's getting what is not public at all. Pardon? Who gets what is not public at all on wages. But in Your Honor's hypothetical, you're not actually disclosing who gets what. You're disclosing your own speculation about who gets what. You know, you're disclosing cafeteria gossip about who gets what. Well, three of the male employees told me what they got. I thought it was a statistically significant sample, so I can now infer that. I think that the disclosure and the inference are both fine under the proprietary confidential information provision. What would not be fine would be – How does some employee know that? So I think that the purpose provision is one way of knowing that. I think that in attachment A, page 32 of the appendix, section A, subdivision I, information that was otherwise proprietary confidential information to the company, but which was disclosed or disseminated in violation of this agreement. In other words, you can't violate the agreement and disseminate things. But because you can disseminate your own information, information that individuals have a right to disseminate is not proprietary or confidential information. And how would they know to disseminate information about my coworkers, whether based on gossip, speculation, inference from a small number, or I saw the pay stub laying on the corner of the desk? Ultimately, Your Honor, I think that the two provisions that I've pointed to, if you've gained the information not in violation of the agreement, that you're free to disclose it. But ultimately, we don't have a full evidentiary record on which to answer that question because how a reasonable employee would have understood this agreement. Quicken Loans was barred from introducing evidence about that very subject, about how it was enforced and how it would be implemented through instructions from managers. None of that was allowed to come in at the hearing. We think that that was a legal error. But ultimately, I need to persuade you of that evidentiary point. I think that we're correct on the text. So your view is that no reasonable employee could look at the policy and reach the conclusion that it would bar the dissemination of the sorts of things that Judge Millett's hypothetical raised? I think that's right, Your Honor, and I think that that is correct, just as no reasonable employee in community hospitals and in certified grocers could have read the prohibitions as applying to their own information. I think that it's common sense to a reasonable mortgage banker at Quicken Loans that they're able to discuss this information with each other. They're able to share it outside the company. What they're not able to do is take the company's databases, lists, metrics, this is a term from the agreement, and other compilations and share that willy-nilly, just as in, for example, the board's decision in IBM from 1982. Information wrongly taken from the company can't be shared, even though individuals can share their own wage information. Judge, couldn't the company have prevented this unfair labor practice complaint by putting a better, I guess, exception or disclaimer in its policy to make clear that notwithstanding the above, that sharing of information regarding terms, conditions, et cetera, of employment can be shared to effectuate your rights under the NLRA? Three points on that, Your Honor. First, certainly that could be done, but the question is not how the agreement could have been better drafted, but whether a reasonable employee here would have read it. And on that point, you know, I think a reasonable employee would not expect to see a carve-out provision, you know, using legalistic language referring to Section 7, a statute that the employees might not even know about in this workplace. And certainly the absence of a carve-out doesn't tell the employees that the company is targeting protected activity. I think a lot of this Court's cases would look different. You all yourself have a carve-out on the non-discouragement provision, right? The company does use carve-outs, but I think that the point is that these are read not as legal documents, but from the perspective of a reasonable mortgage banker. And I think if they were read as legal documents, this Court's standard of review would be different. I mean, the very reason that the Court reviews the Board's decision under the standard it does is that it's not a pure question of contract construction the way that this Court would construe a collective bargaining agreement. It's a more nuanced question of how a reasonable mortgage banker would perceive this agreement. That is what we were not allowed to introduce facts on, but it also highlights the point that legalistic parsing is not required. Certainly the company can use a carve-out. I'm not certain that that always satisfies the Board, but that might be it. Well, if you have a carve-out for some things, but it doesn't include a carve-out for exercise of your rights under the NLRA, doesn't that make things worse that you've only carved out reports to law enforcement? So reports to law enforcement, that's in the non-disparaging provision. But I don't think that that tells us anything about the interpretation of the proprietary. No, I got that. But what I'm trying to figure out is if you have a carve-out that falls short of NLRA rights, Section 7 rights, and you can put it in plain English, your rights to collectively bargain and work together to protect your rights as an employee, however you want to phrase it, if that's omitted and you only have something that talks about reports required by law or to law enforcement, doesn't that make things worse, not better? I don't think necessarily so, Your Honor, because I think that if there were no carve-out for reports required by law, that we would be accused of prohibiting people from engaging in activity that's protected by state law. You might, but your position is that no reasonable employee could read the assimilation of these various provisions to come away with the understanding that they would be barred from disclosing information in certain situations that we've talked about. And when you imagine a reasonable employee who engages in the level of detailed analysis of the policy that you're supposing, it seems like if they read a particular carve-out, then there would be a negative pregnant from the absence of a larger carve-out. Again, Your Honor, I'm not sure that that's familiar analysis in construing a contract or in construing a statute, but I'm not sure that that's how a reasonable mortgage banker would review this provision, to take the non-disparaging provision. If it's not touching Section 7 activity already, then no carve-out is required. And this is a provision that is key primarily to ridicule, disparagement, defamation. Criticize. Yeah, and I think two points about that. I think that, A, they're all of a piece, that this is attacking, this is prohibiting attacks that are false, defamatory, reckless, and so on. The second point is that the Supreme Court, disparaging in particular, picks up the Supreme Court standard from a case called Jefferson Standard, right? That what this Court has said in cases like Endicott-Interconnect is that what you look at is whether a standard like, a provision like this is being used to suppress discussion of an ongoing labor dispute, and here there's no evidence at all. But I don't think any of those decisions comes close to talking about criticism. I take that point, Your Honor, although I should note that the relief ordered by the Board here is to rescind the provision in its entirety. And we think that even if there's a problem with criticizing, that there's no problem with the other provisions. And the same thing is true of this Court. Did you argue to the Board they should just take the one word out? I think we mounted a full-blown attack on everything that the ALJ had said. So we did ask that all of the, you know, we asked that there be no injunction at all. We did not go back and say, now that you've enjoined us, we would, you know, once again, we'd like you to unenjoin provisions, you know, words two, three, and four in the sentence. And on the same point on proprietary confidential information, the injunction extends to things that we think are unproblematic, you know, such as the protection of coworkers' personal information. I mean, the injunction goes so far as to prohibit you from maintaining as proprietary information personnel files, which seems to me a little bit astounding. That's correct, Your Honor, that personnel files, you know, contain extraordinarily sensitive information. You know, this is a company that deals with sensitive information regularly, and of course, like any company, a personnel file can contain disciplinary actions or other sensitive information. And the notion that we would be prohibited from disciplining an employee who takes a personnel file, walks out the door, and puts it on the Internet, we know we find very disturbing. But again, you never argued to the Board for a more narrow injunction. Well, we think, Your Honor, that each of these provisions is unproblematic, either because they don't attack Section 7 protected activity at all. There certainly are clear prohibitions in here, but the things that are prohibited are not protected. And the things that the Board says are protected, like sharing your own wage and salary information or your own address, are simply not prohibited by the policy, and no reasonable employee would read them that way. Do you read the injunction as prohibiting you from trying to draft a better, your client from drafting a better or narrower policy on either the disparagement or the private and confidential information? It certainly allows us to have a new policy, but I do think that it would be problematic for us. Have you tried to get a new policy? Yes, although we have not. I don't think we've discussed it with the Board, but for separate reasons, this policy is long as part of an attempt to make it shorter. We have, in fact, begun promulgating a new policy that we don't think runs afoul of the injunction, but we do think that we are within our rights to do a number of the things that the Board said in its order and that the Board is going to say to you today are unlawful, and that's why we want the court, even though we've changed the policy to grant the petition for review. You had said we shouldn't read these things like contracts, but the company and the employee signed them as part of starting employment. How do we know this isn't essentially terms of employment contract? I think that it is a contract, Your Honor, but I think that this Court's role is not to enforce it as a contract. I think that if the Court were going to engage in that kind of analysis, then it would do so de novo. But should we assume employees read it like a contract? I think that the Board- Or could the Board fairly assume that? No, I think, actually, that the Board does not think that way about employees. I think that the Board operates on the assumption that, A, even policies that are not agreed to by a contract and policies that are are parsed the same way, and, B, if there's any possibility of a chill, you don't actually analyze it like a contract and figure out what the right answer is. You instead ask whether a reasonable employee might read it this way, whether or not- I guess my question is, to the extent it seems contractual to the employee who's signing it, that that may, again, make them more wary. Would it be fair, as part of this reasonable employee calculus, to conclude that an employee is more wary of pushing the envelope or taking atextual understandings of a document that they've signed almost like a contract? Well, I think if we were to engage in that kind of contract analysis, Your Honor, I think that one of the things that we would do, if the contract is ambiguous, is to take extrinsic evidence, which is exactly what we were prohibited from doing. And I think that the understanding that a reasonable mortgage banker at this company, with the background that that mortgage banker would have, would further eliminate any possibility- Does this only apply to mortgage bankers or to all employees? This is the- if you look at the beginning of the agreement- No, but do you have these same prohibitions as to all employees, or is it only for mortgage bankers? That, of course, is not in the record. I believe that it is correct- I believe that not every employee at the entire company signs agreements with exactly these terms, but beyond that, I'm not certain. Okay. So there's nothing in the record on whether a secretary or somebody could disclose the information that the mortgage banker can't? There certainly is nothing in the record at all about that, and that is something that could have been explored, but we were prohibited from doing so. If the Court has no further questions. Thank you. Good morning, Your Honors. Greg Soter for the National Labor Relations Board, and may it please this Court. Your Honors, this decision flows from well-established precedent, which this Court has endorsed, and is consistent with the prior rulings of both the Board and this Court. The Board analyzed the two rules here in question under the Lutheran heritage framework, which this Court has approved, and found that for both rules, the employees would reasonably construe these rules as restricting their Section 7 rights. Can I just, with respect to the Hyundai case that you both sent us letters on, is it clear on the timing for jurisdiction? Did the six-month period that fell within the General Counsel's complaint include time when Ms. Garza was employed? I'm not 100% sure about that. What I do know, Your Honor, is that the rules in this that the Quicken imposed on its employees, by their own terms, extend beyond their employment. And in this case, Ms. Garza was no longer employed, but what led to this complaint was a letter she received from Quicken Loans saying, you are still bound by these confidentiality rules, and you may not disclose any information as set forth in these rules, even though you're no longer an employee. And that was the basis for this charge in this case. So I'm not sure about the six-month period. So the General Counsel has the authority to seek relief on behalf of someone who's not an employee? Is that settled? You don't have to be an employee to file a charge. And you're not an applicant for employment either? No. You're somebody who works for another company and you can file a charge? I believe so, but I'm happy to get more information on that if you'd like. Can you explain the scope of the order here and why the scope of the order isn't excessive, particularly since, with respect to the confidentiality policy, the board has said that they have to cease and desist from deeming personnel files confidential. I mean, why can't a company say you have to treat a personnel file as confidential? Well, the order says you have to rescind your policy, but you can put a new one in that clarifies the extent to which employees may share information that relates to their terms and conditions of employment with others. It does not say you may no longer deem all personnel files confidential. And within personnel files, there is a number of files that would relate to the employee's terms and conditions of employment, and therefore that employees would be under the act free to share with other individuals or with unions. Free to share the files or just free to share the information that's in there? You mean the information as opposed to the paper document? Well, there's a little snippet of information that you think is something that can be shared. That's one thing, but it's a different thing altogether to take the file. And this protects personnel files. And that's why it's overly broad. That's why it needs to be, that's why the board ordered it rescinded, and for the company should now, if it wants to maintain a rule, clarify it. So if a company had a rule that said nothing more than no employee may share employee files of another employee with anybody outside the company, that would be unlawful? Just personnel files is all it said. I believe so, Your Honor, because, for example, taking the example that Mr. Jay mentioned about disciplinary notices, if an employee is disciplined and another employee is not for the same issue, for example, that would be something that an employee might want to bring up to an outside party or union. Well, the employee can say, hey, I got punished and that person didn't, but it's a different thing altogether to hand the file over. Well, if the whole file, if by the file you mean the entire file, and there's proprietary or other matters that are unrelated to the terms and conditions of employment in there, then no, those are not, those would not be protected under Section 7. However, the information in there that is related to the terms and conditions of employment, the employees should be free to share that amongst themselves and with third parties for purposes of engaging in Section 7 conduct. Does it test whether it's needed to exercise those rights or whether it would just facilitate exercise of the rights? Whether it's related, whether they – Right, but it's related to, is that a – how is that articulated? Well, the Act protects the ability of employees to organize  No, it's not a necessity standard. It's whether it is something that is useful for working towards that goal. I'm trying to understand your position. Is it your position from the response you gave to my earlier question that Quicken Loans could keep the same definition for what is deemed proprietary and confidential as long as they put in some language that said, except that you can share the information to the extent that you are using it consistent with Section 7 rights and that's spelled out what that means? I wouldn't be able to tell you if that specific language, you know, would pass muster, but yes, the basic notion is that employees have to know that to the extent that they want to use information which is in personnel files in order to engage in Section 7 conduct and that information really relates to their terms and conditions of employment, they can do so. I guess what I don't like about your answer to my question is that there ought to be some clarity in this area of the law so it shouldn't be a game of gotcha. And what I don't understand from what you've said, either in your briefing or today, is whether the problem is that the definition of what's proprietary and confidential is too broad or instead whether the problem is that they don't have an exception at all for Section 7 conduct or to the extent that they have one, it's too narrow. Which is it? The Board found in this case that the rule is too broad, is overly broad. The Board did not find that it was unlawful because it didn't have, you know, an exception. And so my question to you is, well, can it be cured by putting an exception in? I would believe so, Your Honor, but again, it depends on the terms of the exception and whether it would clarify for employees the extent of their rights because right now the gotcha game is against the employees. Right now, employees are the ones who are supposed to basically take a risk of running afoul this provision and the company's interpretation of this provision if they want to engage in Section 7 protected conduct. Well, I guess I would mildly disagree with you about where the gotcha game is. I mean, Section 7 has been around for how many years? I mean, decades, right? Right. So why are we still trying to figure out how to write a personnel policy or a confidentiality policy? I mean, why shouldn't it be settled how we can do that consistent with the NLRA after, you know, 50, 60 years? I would say because there are so many of these provisions and every company has a different idea of what it wants to protect. And the board, you know, can give guidance and can certainly, through its opinions and through general counsel memoranda, suggest ways in which to clarify. So what is the experience in that regard? Because it seems like there's definitely a legitimate concern on the part of employers in keeping what everybody would acknowledge to be private personnel files, the private information and personnel files private. Right. And then, obviously, there's an interest in assuring that employees aren't unnecessarily dissuaded from exercising Section 7 rights. So in terms of the guidance that you were just referring to, what do you tell employers about how to structure a policy so that they can give effect to both of those considerations? Aside from the board's decisions, which are, you know, really the ultimate guidelines, I can tell you that the general counsel I believe last year issued a memorandum with summarizing various cases and languages, rural languages that had been found lawful or in which the board had, the general counsel had declined to file charges. Now I would put a caveat to that, which is that this is the general counsel speaking. His opinion may not be the board's. But there has been a recognition by this general counsel that employers deserve more guidelines in that department. And what does that say? I mean, so why wouldn't it be enough to have a carve-out for Section 7 rights if the test is whether a reasonable employee would understand the policy to impinge on the exercise of Section 7 rights if the reasonable employee then would look at the text of it and see, well, the one thing it doesn't do is suppress my exercise of Section 7 rights because the policy specifically says that I can do that. To be clear, I'm not saying that a carve-out wouldn't satisfy that. I'm just saying that I can't speak for the board and whether the board would, depending on the language of that carve-out, find it to be sufficiently clear for employees to understand. Go ahead. I was going to go to non-disparagement, so if you have something else. I was just going to say in that same vein, though, if you have a really strict policy and then it just says unless you exercise Section 7 rights, can we expect employees who are unlearned in the law to understand or to perceive their own hazard in figuring out what exactly it is, notwithstanding the very strong language of the policy, to know that they're protected by Section 7? Well, that's part of the reason I can't answer that question is I don't know how the board would feel about that, but I would argue that consistent with what Mr. Chase said about the policy being written in layman's terms, a carve-out like that should, I think, preferably be written in a way that employees can understand rather than in a strict legalese. Can I ask you about the non-disparagement, why the remedy was to eliminate the entire provision as opposed to the particularly problematic part, which was focused on the reference to publicly criticize? The whole Section K-2, I believe it was because... Well, there's one long sentence that discusses publicly criticizing, ridiculing, disparaging, and so on and so forth, and to the extent that... I'm not sure what your question is. Do you think that the board could have said you just need to remove the actual verbs, like publicly criticize, ridicule, disparage, defame, as opposed to the rest of the policy? Well, what if it only said defame? Would that be something that would be problematic? I mean, the most capacious term is criticize. Right. Everything else seems... You can certainly criticize by defaming, but you wouldn't necessarily defame if you criticize. The problem is, again, here we're sort of verging on this difference between legalese and layman terms. A layman employee might construe, and I think that's the board's position here, that defame and disparage and ridicule as just synonyms of criticize, and, therefore, even if you keep the one term, defame or disparage, an employee would reasonably understand that to say, well, I can't criticize or not to know where the limits are, because it is a legal term, and so that's why the board would like the company to either rescind that or clarify it so that employees know, again, so that they don't have to guess, where is the limit? What can I do? So what if the company brought in 50 randomly chosen mortgage bankers to the hearing and they proffered that they would all testify that they believe that the non-disparagement clause didn't interfere with their Section 7 rights? Could that testimony be heard? That testimony could be heard, but it wouldn't be dispositive. Okay. Lots of testimony isn't dispositive when it's heard every day in trial courts, right? That's right. In hearings. The test for relevance isn't whether something is dispositive. No. It's whether it tends to prove something. That's correct, but we're one step removed from that. We're at a step where the test is whether the ALJ's decision was arbitrary or capricious and whether the employer suffered prejudice. And because that kind of testimony would not be dispositive, as this Court found in Simtas, for example, the employer can't show prejudice at this point. I agree with you that it is arguably relevant and reasonable minds might differ on that issue. But at this point, in terms of overruling the Board's order based on that decision, because that kind of testimony would not alter the judge's finding, it's not determinative. How do we know it wouldn't have? I mean, if in this case Quicken Loan said, I've got Ms. Garza herself will say, and I've got 49 other mortgage bankers past and present who will say that they didn't believe that this non-disparagement clause would prevent them from talking to a union rep or something. You're saying that if they had proffered that, we would find no prejudice and it wouldn't just be a non-issue? If they had proffered that, I can't tell you exactly how the Board would have found. The Board, in this case, in the various cases where the Board has looked past the language of the actual rule, there has typically been some kind of ambiguity or at least rules that were not worded as strongly and as clearly as here. Here, you really have a rule that, in terms of the definition of proprietary and confidential information, I mean, there's two pages explaining what that is. So it's a very detailed rule, and the Board found that there was really no way that a reasonable employee could construe it as not to restrict Section 7 rights. If the rule had been perhaps more ambiguous and at that point that kind of testimony had been introduced, perhaps the result would be different. For example, in Albertson's, Your Honor, there was an ambiguous rule which the Board found would be on its face, shall we say, lawful compared to certain other cases in which the Board had found similar rules to be lawful. But there was context in which the employer had applied the rule and had told employees that disclosing that kind of information violated the rule. And so the Board found not that the rule was unlawful based on the discipline imposed to the employee, but that the discipline imposed to that employee created a context that informed the other employee's understanding of the rule and that therefore they would reasonably construe that rule as impinging upon their Section 7 rights. If we had some ambiguity like that, perhaps that kind of testimony that you're talking about would be more relevant and would alter the decision in this case. But we have a rule that is so broadly written that there is really no way. It's kind of what this Court said in sentence, I believe. There is no way to read it any differently than how the Board found. And so unless you have other questions, we respectfully request that the Court enforce the Board's order in full. Thank you very much. Mr. Jay, I think you're out of time. We'll give you two minutes for rebuttal. Thank you very much, Your Honor. And I understand Judge Millette to request that we submit letters on the jurisdictional issue rather than... If you wouldn't mind, that would be great. That would be great. Thank you. We'd be delighted to. I think that the most recent colloquy brings something important out, which is that I heard my friend to say both that this is a very detailed rule and that that cuts against us and also that it's a very broad rule, and I submit that the detail is intended to make it more specific, including some of the specific terms that we've been discussing this morning, including non-public and another one being the personal information of coworkers, which I think is sufficiently clear to tell an employee that they're not prohibited from revealing their own personal information, yet the Board nonetheless reads it the other way. I think Judge Wilkins's question about the carve-out brings up some very important issues. One thing about a carve-out is that a flat license to do anything that is in furtherance of Section 7 rights can raise problems, such as in the Board's decision in Roadway Express 1984, which is that an employee goes into the employer's files, steals some documents, gives them to the union. There's no dispute that that was for a pro-organizing purpose in furtherance of Section 7 rights, but nonetheless impermissible under the employer's policy. And I think that this Court's decision in Community Hospitals adopts the same approach, and I think this is partly an answer to one of my colloquies with Judge Millett, that an employee who's privy to confidential information about another employee has no right to disclose that. The fellow employee can give that permission, but there's no interference with Section 7 rights in those circumstances. And I think that I'll just close with the evidentiary point. In Cintas, the employer was able to bring in evidence about how a reasonable person would interpret the language. The ALJ chose not to rely on it, chose not to credit it, but did not rely on a mistaken view of relevance that deemed it completely out of bounds. That's what happened here. How do you meet the prejudice prong at this stage? Well, I think that the prejudice is that we were completely precluded from... You just wanted to bring in Garza's testimony, right? No, Your Honor. How she read it. That is one part of it. We also wanted to have the company representative testify about some of these points. Well, about enforcement for the company representative. I don't think the company representative can attest as to how employees understood it. So I thought Ms. Garza was there to talk about how she understood it, was your theory, and that the company representative was there to talk about enforcement. Am I wrong? Not just about enforcement, but also about what information is already public. And Ms. Garza was there to talk not just about how she subjectively enforced it, but about what directives had been given by the company, from did you talk to managers or supervisors about how this policy was implemented. And that question was not allowed to be put. So I think that shows that the ALJ was acting on erroneous legal foundations. I think you can review that, DeNovo, and I think you can reverse that. There wasn't anything in the briefs on this, but I was curious as to whether companies face liability under either state statutory or common law for disclosing personal information like this. Are there any such limitations that the companies are finding themselves trapped between the NLRA and maybe state law? Yes, absolutely. Quicken Loans is a Michigan corporation, although the facts of these cases  Quicken Loans is a Michigan corporation. Michigan does, in fact, have such a statute, I understand, that provides an action for damages. Was there any argument below that this policy was driven by the requirements of state law or trying to navigate that line? It's not just state law, Your Honor, and I think that some of this is in the purpose provision that we discussed before. But Quicken Loans, after all, is a mortgage lender, and one of the things about being a mortgage lender is that you acquire a tremendous amount of highly confidential information from your customers, social security numbers, financial information, and the like. And it's not only good business, but also requirements of both federal and state law to safeguard that information. Do you read something in the board's decision to address the disclosure of customer information? We're not saying that the board found that specific aspect of it problematic because that's a different provision. The ALJ would have, in fact, prevented us from doing that. The board at least corrected that error. But my point in bringing that out is that's why mortgage bankers specifically, who are covered by this agreement, have this fairly detailed confidentiality obligation and are expected to safeguard the company's information, even when they might wish to go out and share it with a union or another member of the public. The board has no further questions, so thank you for your time. Thank you, counsel. The case is submitted.
judges: Srinivasan, Millett, Wilkins